MERGENTHALER LINOTYPE CO. v. INTERNATIONAL TYPESETTING MACH. CO. et al.

'Circuit Court of Appeals, Second Circuit. November 9, 1916.)

No. 14.

1. PATENTS ⬧➣328—INFRINGEMENT—LINOTYPE MECHANISM.
    The Bedell patent, No. 848,338, for means by which the operator, without leaving his seat, can disconnect the ejector slide in linotype machines, claim 4, which specifies as an element means for disconnecting the slide from the connecting bar, *held* not infringed by a machine in which such parts are not disconnected, but the slide is made in two sections, which can be separated from each other.
2. PATENTS ⬧➣328—VALIDITY—LINOTYPE MECHANISM.
    The Cooney and Totten patent, No. 759,501, claim 11, for a magazine gate for linotype machines, *held* void, as too broad.
3. PATENTS ⬧➣328—INFRINGEMENT—LINOTYPE MECHANISM.
    The Homans patent, No. 888,402, claim 14, for a magazine gate or matrix lock device for linotype machines, *held* not infringed.
4. PATENTS ⬧➣328—VALIDITY AND INFRINGEMENT—LINOTYPE MECHANISM.
    The Rogers patent, No. 619,441, for a vise jaw mechanism for linotype machines, claims 1 and 2, if valid, are narrow, and are not infringed by the device of the Homans patent, No. 1,107,758, claim 4, *held* invalid as too broad.
5. PATENTS ⬧➣328—INFRINGEMENT—LINOTYPE MECHANISM.
    The Morehouse patent, No. 826,593, for a vise jaw mechanism for linotype machines, *held* not infringed.
6. PATENTS ⬧➣328—INFRINGEMENT—LINOTYPE MECHANISM.
    The Rogers patent, No. 925,843, claims 1, 2, 3, and 4, for a mold disc support for linotype machines, *held* not infringed.
7. PATENTS ⬧➣328—VALIDITY AND INFRINGEMENT.
    The Kennedy patent, No. 797,436, claim 1, for a keyboard lock for linotype machines, conceding its validity, if narrowly construed, *held* not infringed.
8. PATENTS ⬧➣328—VALIDITY AND INFRINGEMENT—LINOTYPE MECHANISM.
    The Muelheisen patent, No. 718,781, claims 2 and 3, relating to magazine channels for linotype machines, if valid, must be narrowly construed, and, as so construed, *held* not infringed.
9. PATENTS ⬧➣328—INVENTION—LINOTYPE MECHANISM.
    The Bedell patent, No. 787,821, claims 1, 2, and 3, for a gear wheel for actuating the second keyboard roll in linotype machines from the first, *held* void for lack of invention.
10. PATENTS ⬧➣328—INFRINGEMENT—LINOTYPE MECHANISM.
    The Dodge patent, No. 797,412, claim 9, for a magazine supporting frame in linotype machines, *held* not infringed.
11. PATENTS ⬧➣328—INFRINGEMENT—LINOTYPE MECHANISM.
    The Homans patent, No. 830,436, claim 7, for a magazine supporting frame for linotype machines, as limited by the prior art, *held* not infringed.
12. PATENTS ⬧➣328—INFRINGEMENT—LINOTYPE MECHANISM.
    The Dodge patent, No. 739,996, claims 1, 2, and 3, for a mold support for linotype machines, *held* infringed.
13. WORDS AND PHRASES—"COVER."
    The word "cover" implies opening and closing, and to be a true cover the part must be movable.
    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Cover.]

⬧➣For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Mergenthaler Linotype Company against the International Typesetting Machine Company and another. From the decree, both parties appeal. Affirmed in part, and reversed in part.

This cause comes here upon cross-appeals from a decree in a suit for infringement of patents. The bill declared upon 25 patents, but in the progress of the trial many of these have been abandoned, and in the present appeal only 12 patents are involved.

The decision of the District Court was adverse to the plaintiff on the following patents:

Bedell, No. 848,338, March 26, 1907, for disconnection of ejector slide.
Cooney and Totten, No. 759,501, May 10, 1904, for magazine gate.
Homans, No. 888,402, May 19, 1908, for magazine gate.
Rogers, No. 619,441, February 14, 1899, for vise jaw.
Morehouse, No. 826,593, July 24, 1906, for vise jaw.
Rogers, No. 925,843, June 22, 1909, for mold disc support.
Kennedy, No. 797,436, August 15, 1905, for keyboard lock.
Muehleisen, No. 718,781, January 20, 1903, for magazine channel.
Bedell, No. 787,821, April 18, 1905, for keyboard roll gears.
Dodge, No. 797,412, August 15, 1905, for magazine support.

The decision of the District Court was adverse to defendants on the following patents:

Homans, No. 830,436, September 4, 1906, for magazine support.
Dodge, No. 739,996, September 29, 1903, for mold support.

Plaintiff appeals from the decision as to the first group; defendant appeals from the decision as to the second group.

The opinion of Judge Hough will be found in 229 Fed. 168. It discusses the patents and the art at considerable length, and, so far as practicable, this decision will avoid the repetition of any statements of the District Judge as to what the record discloses. As in most patent causes, the controversies involve questions of fact, and it is assumed that any one who may wish to know what is here decided will consult both opinions.

Every patent here involved deals with some detail of the complicated machine known as the "Linotype." That remarkable and successful machine, which revolutionized the printing art, was conceived by Mergenthaler and in its great fundamentals protected by patents, which were correctly held to be pioneers in the art. National Typographic Co. v. New York Typographic Co. (C. C.) 46 Fed. 114. These fundamental patents have now expired. During their lifetime improvements in one or other of the details of their structure were devised, some trivial, some of more importance. Although it was not to be expected that the patents taken out to cover them would receive the broad construction which had been accorded to the earlier group, the patentees who took them endeavored, so far as possible, to incorporate in them statements as to "essence of the invention" and claims so phrased that contention might be made that their language was broad enough to cover combinations in some instances, quite different from those particularly shown in the specifications and drawings.

Robert Fletcher Rogers, of New York City (Frederick P. Fish and Odin Roberts, both of Boston, Mass., of counsel), for complainant.

Wetmore & Jenner, of New York City (Edmund Wetmore and Robert D. Eggleston, both of New York City, of counsel), for defendants.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). Judge Hough has discussed at some length the rules to be applied when a court is construing and undertaking to determine the true scope of sub-

sidiary or secondary patents of the sort referred to above. Plaintiff vigorously attacks this part of the opinion. Although there may be a phrase here or there in it which we may not concur in, we are generally in accord with Judge Hough's views as to the interpretation of such patents, but think it wiser in this case to deal with particulars, rather than generals, disposing of each separate patent by itself. They may be taken up in the order in which they were discussed on the oral argument.

## The Ejector Slide Disconnection.

### Bedell, 848,338.

[1] The ejector blade is a flat rectangular sheet of metal, which, being thrust forward into the mold slot, forces out the slug. It is fastened to the forward end of a movable slide; the rear end of the slide is fastened to a bar, which engages with a cam on a wheel at the rear of the machine.

Originally the blade was fastened to the forward end of the slide by screws. When it was desired to change it for one of a different size, the operator went to the rear of the machine and operated the cam wheel, which thrust the slide forward. He then returned to the front, got a screw driver, drew the screws, substituted the new blade for the old, and screwed it on. Randall (560,537) substituted, for the screws, pins on which the blade was placed and held in position, or set free, through the operation of a handle which could be reached from the operator's position at the keyboard in front of the machine. This dispensed with the screw driver; it was, however, still necessary for the operator to go to the rear of the machine and operate the wheel, in order to put parts in position to admit of removal.

Bedell altered the connection between the rear end of the slide and the connecting rod, which ran thence to the cam wheel, so that it could be broken by the operator reaching in from his seat in front and pulling a handle. Such connection being broken, the slide with blade attached can be slid forward and the blade changed. This dispensed with the loss of time involved in the operator's leaving his seat to go to the rear of the machine whenever he wished to change a blade.

Defendant does not break the connection of the slide with the connecting bar which operates it, but divides' the slide into two sections, which he can separate from his seat at the keyboard by pulling on a chain. When separated, the disengaged front section of the slide is moved forward, and the change of blade effected.

The only question is: Does this device infringe claim 4? The specification states that "heretofore the forward end of the link [connecting bar] has been permanently connected with the slide"; also that "the essence of the invention" lies in providing for the instantaneous disconnection of the slide from its operating devices (the connecting rod). Claim 4 reads:

"4. In a linotype machine, the ejector slide movable forward and backward, the actuating cam, connections from the cam to the slide, and means operative from the front of the machine for effecting instantaneous disconnection and

release of the slide at will, whereby the operator at the front of the machine is enabled to move the slide forward at will without changing the position of the cam."

The question presented is not what Bedell might have claimed, if he had chosen to do so, but what limitation he has put upon his claim by the language he has used. It is of no importance to discuss whether he could have claimed as an element means whereby the operator, without leaving his place, can make a break in the sequence between cam and ejector blade head at some place, which will permit him to move the blade forward so as to change. What Bedell did was to specify as an element of his claim the disconnection and release of the slide from the connecting bar, and we do not see how defendant can be held as an infringer when he leaves the connection between slide and connecting bar wholly undisturbed.

## The Magazine Gate Patents.

### Cooney & Totten, 759,501; Homans, 888,402.

In all linotype machines there is what is known as a magazine. Substantially it is a flat box, partitioned within into a succession of runways through which run the matrices as they are fed forward to service position. The magazine lies in an inclined position; the matrices being fed in at the top, which, of course, is open for their reception. From time to time it is necessary to remove the magazine; in that process it is frequently tilted, so that the contained matrices tend to slide in a direction reverse to normal. In simpler language, when this magazine with an open top end is shifted, its contents, or part thereof, are likely to fall out. In the early art a slab of wood or bar of some kind was kept at hand so that the operator could place it across the throat of the magazine and fasten it there. It would act as a gate to prevent the matrices from falling out, when the magazine was tilted back out of normal position.

[2] Cooney and Totten devised a movable gate mounted at the throat end of the magazine to prevent the accidental escape of matrices, with means for holding the gate in operative position and means for throwing it out of action. Evidently defendant's device does not copy the details of Cooney and Totten, for no charge of infringement is made under any of the many specific claims which cover their device. The only claim relied on is:

"11. In a linotype machine, in combination with a removable magazine, a gate or guard movably connected to its upper end to prevent the accidental escape of the matrices when the magazine is separated from the machine."

Undoubtedly this claim textually covers defendant's device, but the difficulty with it is that it covers every combination in which a gate for closing the mouth of the magazine is movably connected to the side of the mouth which it closes. If the old detached slab of wood or metal were hinged to the top of the magazine, so that when desired it could be folded over the top of the magazine chutes and fastened in that position by a hook or a bolt or a bit of string, the device would be covered by this claim. Neither Cooney and Totten nor any one else could properly be granted a claim so broad as this; it is manifestly invalid.

[3] The Homans patent deals with a multitude of different improvements. The particular claim relied on is:

"14. In combination with a supporting frame and a removable magazine, a movable matrix-locking device at the upper end of said magazine, and a spring whereby said bar is moved to confine the matrices as the magazine is moved from its operative position."

[13] It is difficult to make out from the specification and drawing just how the central sliding bar 7' operates; apparently as it is slid forward by a spring, teeth protruding from its side engage each tooth with the top matrix in a chute. Defendant has a true cover for the throats of all the chutes, which is moved in or out of place by spring action, or by being forced out against spring action. We do not see how infringement can be made out, unless this claim 14 be held to cover any movable magazine cover affixed to the magazine (unless a cover be "movable," it is not true cover; the word implying opening and closing) and operated by a spring. The art will not warrant any such broad construction, and defendant's device does not infringe.

### The Visc Jaw Patents.
### Rogers, 619,441; Morehouse, 826,593.

[4] The Rogers patent is quite fully discussed in Judge Hough's opinion, and we fully concur in his disposition of its claims.

[5] The Morehouse patent shows a device whereby the movable jaw can be locked and unlocked, and so moved to definite positions. We cannot agree with the plaintiff in his contention that the claims should be construed so as to cover, not only the device shown, but also any and all means within reach of the operator (in his seat at the keyboard) whereby the movable jaw of the linotype machine may be locked, unlocked, and moved to be set in a predetermined position, all by one hand at a single operation. Unless it can be so construed there is no infringement shown, for concededly the means employed by defendant for effecting the result are specifically different from those set forth by Morehouse. The decree as to these patents is affirmed.

### Mold Disc Support Patent.
### Rogers, 925,843.

[6] As to this patent we are entirely satisfied to affirm on Judge Hough's opinion.

### Keyboard Lock Patent.
### Kennedy, 797,436.

[7] As to this patent, also, we affirm on Judge Hough's opinion. The typewriter art is undoubtedly analogous, and the claim of this patent must be confined to the precise structure shown, if it is to stand at all.

### Magazine Channel Patent.
### Muelheisen, 718,781.

[8] Quotations from the patent and from the argument will be found quite fully set forth in the opinion of Judge Hough, with whose

conclusions we agree. The following additional suggestions may be added: It seems to us that the argument is needlessly complicated by harping on the distinction between "magazine channels," and "magazine channel entrances" as separate things. The place into which the matrix drops is practically the "entrance" or "throat" of the channel, whether the organized machine has or has not an entrance channel in advance of a magazine channel. If it were novel to make these throats of unequal widths, or unequal distances between their centers, and a useful purpose was thereby subserved, we cannot see why it was not an improvement which the inventor might properly claim. It seems evident that one advantage would be a gain in available space; more entrance throats could be placed in the same row. But the fundamental difficulty with plaintiff's case seems to us to be the circumstance that he was not the first to point out that it might be desirable to have the magazine channels of unequal width. Concededly from the very beginning of the art the matrices have been of varying thickness. Cf. cap. W and l. c. i. Mergenthaler in No. 347,629 says:

"B represents the magazine—composed of a series of independent vertical tubes, each of which is made internally of suitable size to receive the particular type which it is designed to contain." Page 2, line 48.

If the tubes or channels thus varied, one might presume that their throats or entrances would also vary. See, too, the following statement in No. 345,526 (page 3, line 84):

"Magazine.—The magazine B consists, as shown in Figs. 2, 3, 5, 15, and 24, of two parallel vertical plates, g, and intermediate sheet-metal partitions, h, the edges of which are seated in grooves formed in the plates, thus dividing the space between the plates into a series of matrix tubes or channels corresponding in width to the thickness of the matrices which they are to receive. The partitions are to be made of exceedingly thin metal, in order that the tubes may be brought together at the base in the smallest space possible. Toward their upper ends the channels diverge, in order to produce mouths of increased width, so as to admit of the matrices dropping therein with certainty, and prevent a matrix designed for one tube from being carried accidentally into the mouth of the next. Each tube is separated from the next by two partition plates joined at the top and bottom, but separated between said points, as shown."

Certainly, in view of these quotations from the prior art, this patentee cannot hold the broad invention of claim 2, viz.:

"In combination with matrices of different thickness, a magazine having entrances of different widths corresponding to their respective matrices."

As to claim 3, which adds the distributor to the combination of claim 2, he certainly cannot cover any and every distributor which would feed channels of unequal widths, but only the particular mechanism which he devised so to feed them, and that, so far as we can make out, defendant does not use.

The decree as to this patent is affirmed.

### Gear Patent for Keyboard Rolls.

### Bedell, 787,821.

[9] To secure the proper escapement of the matrices from the magazine by the manipulation of the keys, it is necessary to interpose

certain pawls, cam yokes, etc. To their proper action it is necessary to have two rolls, which in the prior art were revolved by two short belts from a single driving shaft. It is important that these rolls should revolve in unison; with separate driving belts this did not always happen. Bedell's device has a single belt to one roll, connecting one roll with the other by a gear. This device, a common one in many arts, insured absolute unison of revolution. The District Court held the patent invalid.

If one were informed that matrices did not deliver properly because one of the two keyboard rolls sometimes lagged behind the other, and were further informed that this lagging was produced because one or other of the rolls, whenever extra work was thrown on its driving belt, slipped or stretched, it would certainly not involve invention to correct the difficulty and make the rotation of both rolls uniform by the use of this well-known gear-wheel device.

Appellant contends, however, that there was patentable novelty in discovering what the difficulty was. This is in line with many decisions, such as our recent one in Miehle v. Whitcock, 223 Fed. 647, —— C. C. A. ——, and other cases therein cited. His brief says:

"There had been a very serious problem, and many efforts to correct the transposition of matrices."

Evidence sufficiently persuasive to establish these propositions might result in a conclusion that the patent should be held valid; but a search through the testimony has not revealed any evidence at all to that effect. None is referred to in the brief. The decision of the District Court is affirmed.

## Magazine Support Patents.

### Dodge, 797,412; Homans, 830,436.

[10] Prior to Dodge the machine was so constituted that, when it was necessary to change the magazine, it could be removed only by passing it and the heavy base frame secured to its under side upward and backward over an elevated bar in the main frame. As the magazine, when full, weighed more than 100 pounds this was a laborious task, sometimes requiring two men to accomplish it. Dodge placed his magazine detachably in a frame, and then hinged that frame to the machine in such a way that it could be released, and turned downward, carrying the magazine, which latter could then be readily removed from the frame. When the magazine was replaced on the frame, the latter could be turned upward into place and there fastened. Manifestly this was an improvement, and patentable; but the difficulty with finding infringement results from the language of the claim. Possibly the prior art, of which there is little shown, would have warranted Dodge in taking a claim which would cover any method of attaching the magazine carrying frame to the machine, so that it might be moved to a position which would make it easy to remove the magazine; but he took out no such claim. The one relied on reads:

"9. In a linotype machine, the combination of a main frame, a distributing mechanism thereon, a removable magazine arranged in receiving relation to

the distributor, and a magazine sustaining frame hinged at the end remote from the distributor, to swing upward and downward."

In defendant's structure the magazine sustaining frame does not swing upward and downward, like a trapdoor; it has quite a different cycle of motion; it is hinged nearer to its center than it is to the end remote from the distributor. Had the claim called for a sustaining frame "hinged at a point *remote from the distributor*," there might be some ground for giving it a liberal construction; but, when it specifies a frame "hinged at *the end* remote from the distributor," its meaning is too plainly expressed to justify a construction which will cover defendant's structure.

[11] Homans' patent deals with two magazines, separately removable, and an escapement mechanism for the matrices. It covers a combination of parts for removing the lower magazine as a separate invention by claim 7:

"7. In a linotype machine, the combination of a main frame, an inclined removable magazine, and a secondary frame to sustain the magazine in its operative position, said secondary frame movable bodily in an endwise direction rearward and downward, with the magazine thereon, whereby the removal and application of the magazine is facilitated."

The lower magazine is removably seated on a skeleton frame having longitudinal side plates containing slots and supported by studs on the main frame extending into the slots. When the magazine is to be removed, the magazine sustaining frame is drawn backward being supported and guided by the studs and by some rollers on the main frame. This movement has the "double effect of carrying the magazine rearward and outward from the frame and also of tipping it rearward and downward," so that it is conveniently positioned for removal of the magazine from the skeleton frame. Homans' first movement is downward from the escapement; then a rearward horizontal motion at right angles to the downward movement; then a swing downwards.

In defendant's device the magazine frame has on its underside near its center an arm or bracket about a foot long, the lower end of which is pivoted on a shaft mounted in the main frame, so that the arm acts like the spoke of a wheel. As it is pulled out of normal, the frame moves in the arc of a circle upward, rearward, and downward.

It will be seen that both these devices differ materially from the Dodge device, where the frame, with no rearward movement at all, dropped down in situ like a trapdoor. Judge Hough found infringement mainly because there was, as he held, "full mechanical equivalence in the two motions." We do not concur in this conclusion. Presumably the securing of a backward movement in addition to the downward movement constituted an improvement over Dodge, but Homans was not the first to secure such movement. In the patent to Rogers, 803,928, November 7, 1905, the magazine is "adapted to be tipped upward at the front and then drawn rearward in a horizontal direction from the main frame." The cycle of movement of defendant's device resembles Rogers' as closely as it does Homans'. The latter is not entitled to cover every mazagine frame "movable bodily in an endwise direction rearward and downward"; the combination of parts by

which such motion is secured in defendant's device differs from the combination of Homans'. As to this claim, therefore, the decision of the District Court is reversed. It may be noted that the Rogers patent was not discovered until after decision below, and was inserted in the record by stipulation of counsel and consent of Judge Hough.

## Mold Support Patent.

### Dodge, 739,996.

[12] As to this patent we do not think it necessary to add anything to the opinion of the District Judge.

Except as to Homans, No. 830,436, as indicated above, as to which decree is reversed, the decree of the District Court is affirmed, with costs.