MERGENTHALER LINOTYPE CO. v. INTERNATIONAL TYPESETTING
    MACH. CO. et al.  INTERNATIONAL TYPESETTING MACH. CO. et al.
    v. MERGENTHALER LINOTYPE CO.  MERGENTHALER LINOTYPE
    CO. v. INTERTYPE CORP.

(Circuit Court of Appeals, Second Circuit.  December 12, 1916.)

Nos. 50, 118.

1. PATENTS €═328—VALIDITY AND INFRINGEMENT—TYPOGRAPHICAL MACHINE.
    The Kennedy patent, No. 1,104,512, for a typographical machine, con-
    ceding its validity, *held* not infringed.
2. PATENTS €═328—VALIDITY AND INFRINGEMENT—LINOTYPE MACHINE.
    The Hall patents, No. 665,212 and No. 665,326, relating to slugs in a
    linotype machine and casting mold for the same, *held* not anticipated,
    valid, and infringed.

Appeals from the District Court of the United States for the Eastern
District of New York.

Suits in Equity by the Mergenthaler Linotype Company against the
International Typesetting Machine Company and Erskine Hewitt, re-
ceiver of such company, and against the Intertype Corporation.  From
the decree in the first suit, both parties appeal; in the second suit,
plaintiff appeals.  Affirmed.

By reason of the decisions of the District Court and the action of the
plaintiff in withdrawing its appeals as to two of the patents originally
involved the present controversy is limited to the Kennedy patent and
the two Hall patents.  The claims involved are 19, 20, 21, 22 and 55 of
the Kennedy patent No. 1,104,512, claim 2 of Hall patent No. 665,212
and claim 1 and 2 of the Hall patent No. 665,326.

Robert Fletcher Rogers and William R. Kennedy, both of New York
City, for Mergenthaler Co.

Edmund Wetmore and Robert D. Eggleston, both of New York City,
for appellees International and Intertype Cos.

Before COXE, WARD, and ROGERS, Circuit Judges.

COXE, Circuit Judge.  By reason of the number of patents involved
directly and indirectly and by reason of the fact that both parties have
appealed from the decisions of the District Court, the record presents
a complicated and confusing situation.  The issue is, however, much
simplified by the following statement found in the brief of the plaintiff-
appellant:

"The particular patent thus involved in the two cases is Kennedy No.
1,104,512, to which the present brief is limited as the others are of compara-
tively minor importance."

[1] We will, therefore, proceed to an examination of the issues pre-
sented by the Kennedy patent.  The original Mergenthaler linotype
patented in March and May, 1885, and in September, 1890, was a ma-
chine of extraordinary capacity and utility.  It seemed to possess al-

€═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

most human attributes and as soon as it was understood there was a complete revolution of the printing art. In most of the large printing establishments these machines are found and their use, which began over 30 years ago, has become well-nigh universal. This machine is now free to all, and in considering improvements thereon we should not be influenced by the character of the basic invention but should treat the machine upon which improvements have been made, precisely as we would treat changes and improvements upon any other complicated and ingenious combination, uninfluenced by the marvelous capacity of the original Mergenthaler machines. In other words, after the expiration of the basic patents the machines covered thereby were open to the use of all and the defendants have the same right as the plaintiff to make and use these machines, thus set free by the expiration of the patents. There is now no room for a broad generic invention and whatever patents have been issued since the expiration of the basic patents or which hereafter may be issued, must necessarily be for improvements only. Both parties may improve the original linotype machine and, if what is done in this way required the exercise of the inventive faculties, may secure a patent therefor, but neither party can maintain a monopoly in that which was set free by the expiration of the basic patents.

In Mergenthaler Co. v. International Co., 229 Fed. 407, 143 C. C. A. 527, which, like the present action, was brought upon patents for minor details, this court in a preliminary statement used the following language which is applicable to the present situation:

"Every patent here involved deals with some detail of the complicated machine known as the 'Linotype.' That remarkable and successful machine, which revolutionized the printing art, was conceived by Mergenthaler and in its great fundamentals protected by patents, which were correctly held to be pioneers in the art. National Typographic Co. v. New York Typographic Co. (C. C.) 46 Fed. 114. These fundamental patents have now expired. During their lifetime improvements in one or other of the details of their structure were devised, some trivial, some of more importance. Although it was not to be expected that the patents taken out to cover them would receive the broad construction which had been accorded to the earlier group, the patentees who took them endeavored, so far as possible, to incorporate in them statements as to 'essence of the invention' and claims so phrased that contention might be made that their language was broad enough to cover combinations in some instances, quite different from those particularly shown in the specifications and drawings."

The District Judge selected claim No. 22 of the Kennedy patent as the best illustration of the group of claims now involved. It is as follows:

"In a typographical machine, the combinations of distributing mechanism, a plurality of magazines facing in the same direction and movable as a whole to shift one into and another out of operative relation to the distributing mechanism, and means for effecting such movement of the magazines, the said means being mounted upon the machine frame so as to be removable therefrom as a whole."

The judge thought that the "idea of making a unitary structure which could be easily removed and nearly as easily fitted even to existing second-hand machines, was and is Kennedy's real thought and his

actual contribution to the sum of human knowledge." He also thought it was "a meritorious though minor feat of invention," but that the claim was not infringed for the reason that the defendant's device is not removable at all in the sense in which "removable" is used in the patent. It will serve no useful purpose to discuss the prior art in detail. Substantially all that it is necessary to say will be found in the opinions below and in the opinions of this court on the former appeal. In brief, the situation is this—a great invention which the plaintiff controlled became public property by the expiration of the basic patents. Anxious to continue this profitable business it has, as stated in defendant's brief, secured "about 1,000 patents relating to linotypes," and has brought many suits for the evident purpose of eliminating the defendants as competitors.

Although the plaintiff is entirely within its rights, its action in pursuing the defendants upon what, in many instances, are claims for unimportant details of construction, hardly commends it to a court of equity. Dodge in 1895 produced a machine described as a combination in a linotype patented to Mergenthaler one of the elements being "means for adjusting the magazine to bring one or another of its compartments into operative relation to the distributing and assembling mechanisms." Wich, in 1901, says:

"One object of the present invention is to equip a Mergenthaler linotype magazine comprising a series of magazines."

Other prior patents show a plurality of magazines, each containing a set of matrices so arranged that any one of the magazines may, at will, be brought into operative relation with the other parts of the machine. Without going further into the details of the prior art, there can be no doubt, we think, that on February 1, 1913, the date of Kennedy's application, the field of invention was an exceedingly narrow one. Assuming that the patent is valid it must be construed narrowly and we are of the opinion that as so limited, it is not infringed by the defendant's machines. Substantially the same machine is involved that was the subject of controversy in the former suit. 229 Fed. 407, 143 C. C. A. 527. To state the arguments upon the question of infringement would greatly extend this opinion without any corresponding advantage. The matter is tersely and clearly summed up by the District Judge in his opinion on motion for preliminary injunction of May 26, 1916, as follows:

"But even if result only be looked at I do not think that either defendant's present or former result is that of Kennedy. What he did was to show a simple and ingenious method of adapting a single magazine machine to multiple magazine requirements. What the defendant has now done is to make a main frame which will support upon the same pivots or pinions any one of three supporting frames of differing capacities; but each of the three supporting frames is mechanically exactly the same frame that was urged as an infringement in the last litigation. If that frame did not infringe none of the present models can offend."

[2] It remains to consider the two Hall patents Nos. 665,212 for a mold and 665,326 for a slug, and the decree based thereon in favor of

the plaintiff.  The International Typesetting Machine Company and its receiver appeal from the decree.  Claim 2 of the mold patent is alone involved and is as follows:

"2. A linotype-mold, having the slot *o*, groove *3*, and groove *6*, substantially as described and shown."

Both claims of the slot patent are involved and are as follows:

"1. The improved linotype having a broad upper face with the type characters thereon, the relatively thin body portion, and the ribs on the body sustaining the overhanging portion of the face.

"2. A linotype having an unbroken upper face, a relatively thin slug or body to sustain the same, and ribs extending from the overhanging portion of the face downward on the body, said ribs and the vertical edge of the overhanging part being flush with each other and parallel with the opposite side of the slug, whereby the slugs are adapted to be locked together and to produce a form without openings in its surface."

These improvements seem so simple and obvious as the natural development of the art that we are in doubt whether anything more than the skill of the calling was required to make the changes required.  The original Mergenthaler patents, as before stated, revolutionized the printing art and every feature of that machine is regarded as sharing in some degree, at least, in the wonderful advance made in that art. What would be regarded as a simple and obvious improvement in another machine is in this art looked upon as the product of a high type of inventive genius.  Though we think this homage is perhaps carried too far, we appreciate that in a machine so complicated and so delicately organized, it may be doing injustice to one who makes a well defined advance in the art to treat him as a skilled mechanic only.  Undoubtedly a slug which carries a large face must be made of less metal proportionately than the small solid slug.  Hall has the advantages of the solid slug, but by reducing the amount of metal used he enables it to chill and set quickly in the mold and reduces the amount of metal to be cut away by the trimming knife.  The mold patent is also for a small improvement substantially the same as in the slug patent as the one is cast in the other.  The question of invention is a doubtful one but we are inclined to think the doubt should be resolved in favor of the patents.

It follows that the decrees of the District Court are affirmed with costs.